# G. Groetzinger's Sons *v.* W. L. Kann & Co., Appellant.

[Marked to be reported.]

*Sale—Warranty—Tanned leather.*

In an action to recover the price of leather, it appeared that plaintiffs wrote defendant, " Our leather is now thoroughly tanned; will re-ship on Saturday hoping the same will exist as before," and that defendant replied, " If your leather is thoroughly tanned now and all right in other respects we would take it as before." *Held,* that there was a warranty on part of plaintiffs to furnish " thoroughly tanned " leather.

Argued Oct. 2, 1894. Appeal, No. 241, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1892, No. 311, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for price of leather. Before MAGEE, J.

At the trial defendant claimed that the leather furnished by plaintiff was not thoroughly tanned, and that it was unmerchantable.

The court overruled the following offers of testimony made by defendant's counsel :

" I offer to prove by the witness on the stand, W. L. Kann, that for two years prior to Feb. 5, 1891, he had been buying harness leather from plaintiffs in this case ; that harness leather is a certain quality of heavy leather, thoroughly tanned, which is used in manufacturing harness ; that plaintiffs had a standing order from defendant for their entire product, or as much of the entire product as they saw fit to sell to defendant, of their harness leather ; that in pursuance of that order, from time to time plaintiffs shipped to defendant harness leather, and it proved of so bad a quality that during, or in the beginning of February, 1891, defendant complained to plaintiffs, whereupon plaintiffs wrote to defendant a letter, offered in connection with this offer. In reply to this the defendant wrote plaintiffs a letter, dated Feb. 5, 1891, containing the words, ' As soon as you know the leather is all right, you may make a shipment.' That defendant received in reply to this a postal card in which they say : ' Our leather is now thoroughly tanned, and will be shipped on Saturday.' In reply to this defend

ant wrote plaintiffs a letter, marked ' Exhibit D.' ' Gentlemen : Yours of the 19th received. We have a large stock of leather ; trade is very dull and has been so since the first of the year and prices off, but if your leather is thoroughly tanned now and all right in every respect, we would take it.' After the receipt of said postal card and said answer thereto, just referred to, plaintiffs made several shipments, all in pursuance of that standing order hereinbefore referred to, and shipped the leather now sued for as of April 25th. That when defendant received the leather of the 25th, he tested the same, to see whether or not it was thoroughly tanned and whether or not it was leather fit for harness purposes, that is to say, whether it was ' harness leather.' That he found upon inspection that it was not, and immediately notified plaintiffs that what they had sent was not harness leather and offered to return the same, and informed them that he held the same subject to their order." [1]

" Defendant's counsel offer to prove by the witness on the stand that harness leather is only leather that is thoroughly tanned." [2]

" Defendant's counsel offer to prove by the witness on the stand that the leather so delivered was unmerchantable." [3]

" Defendant's counsel offer to prove by the witness on the stand, W. L. Kann, that defendant commenced dealing with plaintiffs about two years prior to Feb. 3, 1891, when he began to buy harness leather from them, and gave them a standing order for harness leather, which he continued to purchase from them down to some time prior to Feb. 3, 1891. That he ceased buying from them for the reason that the same turned out to be poor and unmerchantable. The dealings were resumed again between them by reason of the postal card, before referred to, wherein plaintiffs said that their leather was now thoroughly tanned, and that thereafter the communication, ' Exhibit D,' was written, saying they might ship again if the leather was thoroughly tanned. All the communications, however, refer to the original standing order for harness leather and harness leather only." [4]

" Defendant's counsel proposed to prove by the witness on the stand, Charles F. Keefer, that he is a tanner and has been engaged in that business many years, and is engaged largely in the business of tanning harness leather. That harness

leather is of a heavy grade and must be thoroughly tanned, or it is not harness leather and cannot be used for that purpose. That he has examined the leather referred to in this case and that the same is not harness leather and is unmerchantable." [5]

" Defendant's counsel offer to prove by the witness on the stand, Ernest Frey, that he is a harness maker and has been engaged in the making of harness for some years. That unless leather is of a heavy quality and thoroughly tanned, it is not harness leather at all." [6]

The court gave binding instruction for plaintiffs. [7, 8]

Defendant's points were as follows :

"1. The plaintiffs' written communication offered in evidence amounts to an express warranty that the leather should be thoroughly tanned. If the jury believes said leather was not thoroughly tanned, the verdict should be for the defendant." Refused. [9]

" 2. The plaintiffs being the manufacturers of said leather, the same having been sold by the plaintiffs and purchased by the defendant as harness leather, that is, leather out of which harness is made ; if the jury believed that leather which is not thoroughly tanned is unfit to make harness, and its not being thoroughly tanned was not discoverable by the defendant, who was a dealer therein, and was discoverable only by the consumer when he cut up the same, then there exists an implied warranty in this case." Refused. [10]

" 3. If the jury find that said leather was not merchantable, their verdict should be for the defendant." Refused. [11]

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (1–6) rulings on evidence, quoting offers, but not quoting exceptions ; (7–11) answers to points, quoting the points, but not the answers.

*A. Israel, Josiah Cohen* with him, for appellant.—It is unquestionably within the power of the parties to stipulate or contract that goods to be delivered shall be of a certain quality : Coal & Iron Co. v. Hoffman, 4 Atl. R. 848 ; Holloway v. Jacoby, 120 Pa. 583 ; Dailey v. Green, 15 Pa. 125 ; Holt v. Pie, 120 Pa. 440 ; Pratt v. Paules, 4 Atl. R. 751.

The bill of parcels designated the leather as " harness leather,"

from which an implied warranty arises that it shall be harness leather. Under the evidence offered this means leather fit to make harness, and for which purpose the leather must be thoroughly tanned or it is useless: Borrekins v. Bevan, 3 Rawle, 23; Lord v. Grow, 39 Pa. 91; Edwards v. Hathaway, 1 Phil. 547; Biddle on Warranties, §§ 151-8.

If the leather was not thoroughly tanned, and the want of thorough tanning destroyed its character as harness leather, both of which we offered to prove, we had a right to show it: Jennings v. Gratz, 3 Rawle, 168; Iron Works v. Barber, 106 Pa. 140; Biddle on Warranties, §§ 167-8.

Goods delivered by a vendor, especially where there is no opportunity for inspection by the vendee prior to their delivery must be merchantable.

*Johns McCleave, D. T. Watson* with him, for appellee.—The court below was right in ruling out the offers attempting to show a warranty by the communication of Feb. 19, because this communication is no more than a mere statement or representation of the quality of the goods, and is not a warranty, nor the evidence of a warranty: Wetherill v. Neilson, 20 Pa. 448; Ryan v. Ulmer, 108 Pa. 338; Whitaker v. Eastwick, 75 Pa. 229; Fraley v. Bispham, 10 Pa. 320; Shisler v. Baxter, 109 Pa. 443; Jackson v. Wetherill, 7 S. & R. 480; McFarland v. Newman, 9 Watts, 55; Holmes v. Tyson, 147 Pa. 305; Warren v. Coal Co., 83 Pa. 437.

The offers to show that the leather was not harness leather because not properly tanned, and that it was unmerchantable, were correctly ruled out by the court.

The offers to show that the leather was not merchantable were also correctly ruled out by the court, because, in Pennsylvania, there is certainly no implied warranty that the goods sold shall be merchantable: Seiser v. Roberts, 105 Pa. 246; Ryan v. Ulmer, 108 Pa. 332.

OPINION BY MR. JUSTICE GREEN, Jan. 7, 1895:

When the plaintiff wrote to the defendants on February 19, 1891, "our leather is now thoroughly tanned; will re-ship on Saturday hoping the same will exist as before," and the defendant, replying thereto, on Feb. 20, 1891, wrote, "but if

your leather is thoroughly tanned now and all right in other respects we would take it as before in order to have it when trade will be better," etc., the subject of the negotiation between them must be considered as "thoroughly tanned leather." That is what the defendant was willing to buy, and that was what the plaintiffs said was the character of the leather they would ship. The defendant said "If your leather is thoroughly tanned," etc. The word "if" made the order conditional and when the plaintiffs shipped leather after that, to the defendant, it was upon the express condition that it should be "thoroughly tanned." As we understand the correspondence this condition attached to all shipments to be made subsequently thereto. We have no hesitation in placing the contract within the line of cases illustrated by Phila. & Read. Coal & Iron Company v. Hoffman, 4 Atl. Rep. 848, in which the contract was for the sale and delivery of iron "strictly neutral" and we said, "We are clearly, of opinion that the contract of sale in this case created a warranty as to the quality of the iron."

Holloway v. Jacoby, 120 Pa. 583, is another instance of the same kind. The defendant offered by letter to sell plaintiff a car load of corn. Plaintiff replied by letter saying, "We will give 53c. per bushel for car corn provided it is good salable corn." Defendant answered: "We will accept your offer for one car load of corn." We held that there was a warranty that it was good salable corn. Mr. Justice PAXSON, delivering the opinion, said, "The acceptance of the plaintiff's offer was an agreement to send him a car load of good salable corn, and not a car load of corn generally, without regard to quality, as was assumed by the referee. We are of opinion that there was an implied warranty that the corn was good salable corn. It was this the plaintiff bought and the corn delivered was not of this description."

In Holt v. Pie, 120 Pa. 440, the defendant ordered lumber by letter from the plaintiff in the following words, "Enter the following order of good sound hemlock lumber." Plaintiff by letter accepted the order and shipped lumber which it was alleged was not good sound hemlock. Our brother WILLIAMS in the opinion said, "If when the lumber reached its destination it was not good, sound hemlock such as Holt ordered and Pie agreed to furnish, to that extent performance of the con-

tract was defective. Holt was not under obligation to accept any quality of lumber except that for which he had contracted, and he had a right to decline to pay for lower grade."

In Pratt v. Paules, 4 Atl. Rep. 751, the plaintiff ordered slate from defendant, saying in his letter, "Shipment must be strictly No. 1 in quality, no graybacks or scabs." Defendant replied, "Can fill your entire order at once." We held that these communications created an express warranty, saying, "He (plaintiff) was entitled to receive slate of quality No. 1 free from scabs and graybacks."

So in the case at bar the plaintiffs said to the defendant, after complaints had been made by the defendant to the plaintiffs that their leather had come back to him from his customers because it was not thoroughly tanned, "Our leather is now thoroughly tanned. Will re-ship on Saturday hoping the same will exist as before." And the defendant replying to that letter said, "But if your leather is thoroughly tanned now and all right in other respects we would take it as before," etc. These letters make a contract to which both parties assent, that the leather to be sent must be thoroughly tanned leather, and not merely leather generally. There were special reasons why the defendant was obliged to have that particular quality of leather. He wanted harness leather and he offered to prove that harness leather must be thoroughly tanned and could not be used as such unless it was. He certainly should have been permitted to make such proof. All the offers of testimony by defendant were rejected. We are clearly of opinion they should all have been received so that the case could go to the jury on its merits. The assignments of error are all sustained.

Judgment reversed and new venire awarded.